**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **DEBI MCKINNEY, on behalf of herself and others similarly situated,** : : : **Plaintiff,** : : **v.** : : **CARLTON MANOR NURSING &, REHABILITATION CENTER, INC.,** : *et al.*, : **Defendants.** : | **Case No. 14-CV-279** **JUDGE ALGENON L. MARBLEY** Magistrate Judge Deavers |

## OPINION & ORDER

Before the Court are the January 29, 2016 motions for summary judgment filed by Plaintiff Debi McKinney (Doc. 138) and Defendant Sovran Management Company, LLC ("Sovran") (Doc. 137). Also before the Court is Plaintiff's motion to strike an exhibit in Defendant's response in opposition to Plaintiff's motion for summary judgment, namely the affidavit of attorney Thomas W. Hess. (Doc. 152.) For the reasons that follow, the Court **DENIES** Plaintiff's motion for partial summary judgment, **GRANTS** Defendant's motion for partial summary judgment, and **DENIES** as **MOOT** Plaintiff's motion to strike.

### I. BACKGROUND

#### A. Factual Background

From June 2004 through February 13, 2014, Plaintiff Debi McKinney worked at the nursing home located at 726 Rawlings Street, Washington Court House, Ohio (the "Facility"). (Pl.'s Decl. in Support of Mot. for Class Cert., Doc. 121-1, ¶ 3.) The Facility was a Medicare-and-Medicaid-certified nursing home. (Def.'s App'x to Mot. for Summ. J., Doc. 141-4 at 75.) On December 1, 2013, Joseph Hertanu, administrator of the Facility, entered into an agreement with

1

Sovran to provide administrative and personnel oversight at the Facility. (Pl.'s Reply, Ex. A, Doc. 151-2 at 3-11.) Sovran's management role was all-encompassing. *See id.* at 7 (Q: What aspects of the [F]acility would [Sovran] manage? A: Everything.). For example, Sovran would give instruction to employees on how to operate the Facility, relieving Hertanu of any involvement with its day-to-day operations. (*Id.* at 4-5.)

Hertanu needed the help. In July of 2013, the Ohio Department of Health ("ODH") cited the Facility for numerous deficiencies. (*Id.* at 10) (citing September 20, 2013 Notice of Imposition of Remedy Letter from ODH, from Dep. of Joseph Hertanu, Doc. 141-4 at 43-46). A deficiency is an adverse "finding cited by the department of health during a survey, on the basis of one or more actions, practices, situations, or incidents occurring at a nursing facility" of varying degrees of magnitude and scope. (Doc. 137 at 5) (quoting O.R.C. § 5165.60(D)(1)). ODH then conducted more surveys on July 16, July 30, September 26, and October 17 of 2013. (Doc. 141-4 at 43-90.) The surveys indicated that the Facility was out of compliance with dozens of ODH requirements, and ODH directed the Facility to correct its noncompliance. (*Id.*).

In late 2013, Hertanu contacted Michael Marshall, then member of and now Chief Financial Officer for Sovran. (Doc. 151-2 at 7, 11.) Hertanu was interested in hiring Sovran as a consultant to address the Facility's deficiencies, to help bring the Facility into compliance with ODH requirements. (Doc. 137 at 11) (citing Dep. of Michael Marshall, Doc. 141-2 at 3-17). Hertanu and Marshall came to an agreement providing for Sovran's consulting services and to help Hertanu manage the Facility. (Consulting Agreement, Doc. 141-2.) The agreement characterized Sovran as an independent contractor of Hertanu, providing that "Client and Consultant acknowledge and agree that the Services shall be performed on an independent contractor basis, that Consultant is not an employee of Client for any purpose . . . and that

2

nothing [therein] shall be construed to create a fiduciary relationship between Client and Consultant." (*Id.* at 18.)

In November of 2013, Marshall contacted Chris Oswald ("Mr. Oswald"), an executive for the Blue Ridge Nursing and Rehabilitation facility ("Blue Ridge") in Martinsville, Virginia. (Dep. of Chris Oswald, Doc. 142-1 at 3, 7-9, 21.) Sovran provided management services to Blue Ridge at the time. (*Id.* at 21.) Marshall also asked Mr. Oswald to meet in Washington Court House, Ohio in early December, wanting Mr. Oswald to "help [the Facility] get out of some problems up there." (*Id.* at 8.) Marshall asked Mr. Oswald to bring even more professional consultants to assist. (*Id.*) The two arrived at the Facility for the first time on December 1, 2013, when they first learned that the Facility had "28 or 30 [ODH] deficiencies." (*Id.* at 8-9.) Marshall said the Facility was a "mess." (Marshall Dep., Doc. 141-2 at 6.)

The Facility submitted plans of correction ("POC") to ODH periodically. (Dep. of April Patrick, Doc. 142-3 at 22, 42.) As of January 2014, the Facility had remedied 26 of its 27 deficiencies. (*Id.* at 42-47.) The Facility sent ODH a 12-month plan to address the sole remaining deficiency, proposing to spend $1,500,000 over 12 months to repair the building. (Oswald Dep., Doc. 142-1 at 43-44.) On January 15, 2014, Dr. Theodore Wymsle, Director of Health of ODH, sent Hertanu a notice that ODH was going to issue an order permanently revoking the Facility's license to operate. (Doc. 141-4 at 89-90.) On January 16, 2014, Patrick received the letter from ODH rejecting the Facility's plan. (Doc. 142-4 at 87-88.) Patrick, with consultation from Hertanu, then prepared a layoff plan. (Doc. 142-3 at 39.) The Facility began laying off workers on January 21, 2014, five days after the Facility received the rejection letter from ODH. (*Id.* at 18.)

3

### B. Procedural History

Plaintiff Debi McKinney brought suit in this Court against Defendant Carlton Manor Nursing Home and others in a complaint filed on March 24, 2014. (Doc. 1.) The now-operative complaint was filed by Plaintiff on July 2, 2015 on behalf of herself and others similarly situated against Defendants Carlton Manor Nursing & Rehabilitation Center, Inc. ("Carlton Manor") (later renamed the Manor at Washington Court House, LLC ("Manor House")), NRC Staffing, Inc. ("NRC Staffing"), NRC Management, Inc. ("NRC Management," together with NRC Staffing, the "NRC Defendants"), and Sovran. (Doc. 47.) Plaintiff alleges that Defendants owe her and class members 60 days' worth of unpaid wages and benefits arising from violations of the Worker Adjustment and Retraining Notification Act of 1988, 29 U.S.C. §§ 2101, *et seq.* (the "WARN Act"). (Second Am. Class Action Compl., Doc. 104.)

The Clerk of Court has entered default in the matter against Carlton Manor. (Doc. 28.) On April 13, 2015, the Court adopted the report and recommendation of the magistrate judge ordering default judgments against the NRC Defendants. (Doc. 87.) On January 25, 2016, the magistrate judge issued an order to show cause why default should not be entered against Manor House. (Doc. 135.) Manor House has not responded to that order. Sovran is the sole defendant not in default or likely to be defaulted.

### II. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) provides that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is deemed material only if it "might affect the outcome of the lawsuit under the governing substantive law." *Wiley v. United States,*

20 F.3d 222, 224 (6th Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

The necessary inquiry for this Court is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251-52). In evaluating such a motion, the evidence must be viewed in the light most favorable to the nonmoving party. *United States S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013). The court reviewing a summary judgment motion need not search the record in an effort to establish the lack of genuinely disputed material facts. *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404 (6th Cir. 1992). Rather, the burden is on the nonmoving party to present affirmative evidence to defeat a properly supported motion, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir.1989) (citation omitted), and to designate specific facts that are in dispute. *Anderson*, 477 U.S. at 250 (citation omitted); *Guarino*, 980 F.2d at 405.

To survive the motion, the nonmoving party must present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). The mere existence of a scintilla of evidence in support of the opposing party's position is insufficient to survive the motion; there must be evidence on which the jury could reasonably find for the opposing party. *See Anderson*, 477 U.S. at 251 (citation omitted); *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 (6th Cir. 1992) (finding that the suggestion of a mere possibility of a factual dispute is insufficient to defeat a motion for summary judgment) (citing *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)).

### III. ANALYSIS

The WARN Act ("the Act") requires employers to notify affected staff at least 60 days before a plant closing or mass layoff. *Calloway v. Caraco Pharm. Labs.*, 800 F.3d 244, 251 (6th Cir. 2015) (citing 29 U.S.C. § 2102(a)). The Act's purpose is to extend:

> protection to workers, their families and communities by requiring employers to provide notification 60 calendar days in advance of plant closings and mass layoffs. Advance notice provides workers and their families some transition time to adjust to the prospective loss of employment, to seek and obtain alternative jobs and, if necessary, to enter skill training or retraining that will allow these workers to successfully compete in the job market.

*Id.* (citing 20 C.F.R. § 639.1(a)). At issue here is whether Sovran is liable under the Act and, if so, whether Sovran succeeds with its affirmative defense. Sovran argues that summary judgment in its favor is proper for two reasons: (1) it was never Plaintiff's employer; and (2) even if it were, it is exempt from liability because of the "unforeseeable business circumstances" exception to the Act. Plaintiff argues that Sovran is liable under a "single employer" theory, and that Sovran may not legitimately assert the unforeseeable business circumstances defense because it waived the defense and otherwise did not comply with the Act's prerequisite criteria and that, even if it could raise it, Sovran's defense fails. The Court will address the two issues in turn.

### A. WARN Act Liability

Sovran argues that it is not liable under the Act because it was never Plaintiff's employer. Under the plain language of the Act, only employers are liable to aggrieved former employees. 29 U.S.C. § 2102(a) ("An employer shall not order a plant closing or mass layoff until the end of a 60-day period after the employer serves written notice of such an order"). Sovran contends that its status as an independent contractor to the Facility, and its course of dealings with the Facility,

render it not Plaintiff's employer. Plaintiff argues that Sovran was Plaintiff's employer for purposes of the Act under a "single employer" theory.

Whether Sovran was Plaintiff's official employer is not at issue. The terms of the contract between Sovran and the Facility render Sovran an independent contractor, and in fact created no fiduciary relationship between the two entities whatsoever. (Doc. 141-2 at 18.) Plaintiff instead offers a single employer theory, pointing to Sovran's involvement in the administration of the Facility. Plaintiff contends that Sovran was entangled with the Facility to such a degree that the Court should consider the two entities a single employer for purposes of the Act. There is no Sixth Circuit guidance on this issue, but two cases from other circuits are instructive.

In *Administaff Companies, Inc. v. New York Joint Board, Shirt & Leisurewear Division*, 337 F.3d 454, 456 (5th Cir. 2003), TheCustomShop.com ("TCS"), the owner of a men's clothing production plant in New Jersey, closed that plant without providing affected employees the WARN Act's required 60-day notice. Prior to the closure, TCS contracted with Administaff Companies, LLC ("Administaff"), a personnel management and administrative services firm, to help with TCS operations. *Id.* After the closing, the union representing affected TCS employees demanded that Administaff compensate each employee of the bargaining unit with sixty days of pay and benefits because affected employees were not notified of the closing in compliance with the Act. *Id.* Administaff then commenced a declaratory judgment action asking the district court to find that Administaff was not an employer under WARN. *Id.* The district court found as much, and the union appealed. *Id.* The Fifth Circuit affirmed, ratifying the district court's reliance on *Pearson v. Component Technology Corporation*, 247 F.3d 471 (3d Cir. 2001), to provide the framework for analyzing whether the TCS and Administaff were a single employer for purposes of the Act. The *Pearson* court affirmed a district court's use of the multi-factored test

promulgated by the Department of Labor ("DOL") for determining single-employer liability under WARN. 247 F.3d at 476. This Court agrees with the Third and Fifth Circuits' decisions endorsing the DOL test as the appropriate one to determine single-employer status and, thus, possible liability under WARN.

The DOL test for this determination urges the Court to consider: (1) common ownership; (2) common directors or officers; (3) de facto exercise of control; (4) unity of personnel policies emanating from a common source; and (5) the dependency of operations. *Id.* at 483 (citing 20 C.F.R. § 639.3(a)(2)). This list is, as with most balancing tests, not meant to be exhaustive, but rather to be "a reminder . . . [that] a number of circumstances may be relevant." *Id.* The crucial issue is "whether the two nominally separate entities operate at arm's length." *Id.* at 495 (citing *NLRB v. Browning-Ferris Indus. of Pa., Inc.*, 691 F.2d 1117, 1122 (3d Cir. 1982)).

The question of whether an affiliated entity is a single employer under the WARN Act can arise, as it does here, "when plaintiffs seek to impose liability for violations on affiliates of insolvent corporations." *Id.* at 483 (citing *Local 397, Int'l Union of Electronic, Elec. Salaried Mach. & Furniture Workers v. Midwest Fasteners, Inc.*, 779 F.Supp. 788 (D.N.J. 1992)). As mentioned in pt. I B, *supra*, Sovran is the only joined defendant not in default or likely to be defaulted, so Plaintiff has a keen interest in finding Sovran and the Facility a single employer.

In arguing that Sovran and the Facility are a single employer, Plaintiff points to certain aspects of the relationship between Sovran's employees and officers and those of the Facility. Plaintiff notes, for example, that Sovran (and not the Facility) executed a service agreement with a professional employer organization named People to process payroll on behalf of the Facility. (Attachments to Pl.'s Mot. for Summ. J., Doc. 139-5 at 3, 25.) And, notably, it was Marshall, Sovran's part-owner and chief financial officer, who executed the agreement as the Chief

8

Financial Officer of "Client," meaning the Facility. (*Id.*) Even more, when the Ohio Department of Job and Family Services sent a draft WARN notice to Patrick, she did not handle the matter herself, but rather forwarded the notice to Sovran for advice. (Doc. 139-4 at 49.) This, argues Plaintiff, is not the behavior of an entity without control of the Facility's operation. (Doc. 145 at 3.) Indeed, Marshall stated that it was his ultimate goal to have Sovran manage the facility long-term. (Doc. 139-5 at 8-9.)

These facts suggest a relationship probably closer than arm's length, and an expected relationship definitely closer than arm's length. But a crucial aspect of the DOL analysis under WARN, namely the consideration of whether Sovran had de facto control over the Facility, centers on whether the entity "was the decisionmaker responsible for the employment practice giving rise to the litigation," i.e. the decisionmaker responsible for closing the Facility. *Pearson*, 247 F.3d at 504. This makes sense, because it is only an employer who "*order*[*s*] a plant closing or mass layoff" that is liable under the Act. 29 U.S.C. §§ 2102(a) and 2104(a)(1) (emphasis added). Plaintiff admits that Sovran did not order the Facility's closing. (Doc. 145 at 5) ("Plaintiff's argument is not that Sovran ordered or caused the closure of the Facility."). As discussed above, Marshall envisioned Sovran managing the Facility long term, and Sovran had even consulted without pay leading up to the closure, anticipating payment from the Facility's future success. (Doc. 139-5 at 6.)

Because Sovran had no involvement in deciding to close the Facility, the Court **GRANTS** Defendant's motion for partial summary judgment, and **DENIES** Plaintiff's. To hold otherwise would violate the plain language of the Act; moreover, because Sovran had no involvement in the closing, it cannot rightly be held liable for a WARN Act violation arising from that closing. Because the Court is satisfied that Sovran is not liable under WARN, that

9

would dispose of the case. The Court will nonetheless also address Plaintiff's arguments relating to Defendant's unforeseeable business circumstances defense.

### B. Unforeseeable Business Circumstance Defense

Plaintiff argues that Defendant's unforeseeable business circumstance defense fails for three reasons: (1) that Sovran cannot raise the defense because it waived it by failing to plead the particular defense in its answer; (2) that it cannot raise the defense because it did not provide affected employees written notice of the reason(s) why it could not give them 60 days' notice prior to the plant closing; and (3) that the closing was foreseeable, if not certain.

As to waiver, the law Plaintiff cites for this argument is unpersuasive. In *In re Tweeter OPCO, LLC*, a bankruptcy court decision found that the defendant could not first raise the defense at summary judgment because doing so "would unfairly prejudice the Plaintiffs, as they had no meaningful opportunity to conduct discovery on facts relevant to the good faith defense." 453 B.R. 534, 547 (B.R. Del. 2011). This is unlike here, however, where Plaintiff was fully aware of the likelihood of Sovran raising the defense, and even addressed the defense directly in her motion for summary judgment. (Doc. 140 at 9.) Further, other joined defendants in the matter raised the unforeseeable business circumstances defense in their answers as far back as July 21, 2015. *See* Def. Manor at Washington Court House's Second Am. Answer, Doc. 106, ¶ 7. Defendant did not waive its unforeseeable business circumstances defense.

As to failure to provide affected employees written explanation why they would not be getting 60 days' notice, according to 29 U.S.C. § 2102(b)(3), an employer relying on any defense reducing the otherwise required 60-day WARN Act notice period "shall give as much notice as is practicable and at that time shall give a brief statement of the basis for reducing the notification period." Here, Patrick and Hertanu issued layoff notices to affected employees on

January 21, 2014, merely five days after notice of ODH's rejection of their proposed plan to remedy the Facility's deficiencies. (Doc. 142-3 at 18, 39.) Sovran skipped town as soon as soon as the rejection arrived, which was on January 16. (Oswald Dep., Doc. 142-1 at 12; Foss Dep., Doc. 131 at 67.) Plaintiff, as with other employees, was notified of her layoff on her final day of work, when a representative of the Facility asked her to sign "a piece of paper." (McKinney Dep., Doc. 130 at 43.) Because Sovran was not Plaintiff's employer, Sovran need not have done anything regarding notice. Were Sovran Plaintiff's employer, however, it would have had to provide notice, however short. The Act requires all who wish to raise the unforeseeable business circumstances defense to provide affected employees reason for less than 60 days' notice of closing or layoff. 29 U.S.C. § 2102(b)(3).

Finally, the Court turns to the possible merits of Sovran's unforeseeable business circumstances defense. 29 U.S.C. § 2102(b)(2)(A) provides that "[a]n employer may order a . . . layoff before the conclusion of the 60-day period if the . . . layoff is caused by business circumstances that were not reasonably foreseeable as of the time that notice would have been required." Defendant contends that it was hopeful that ODH would accept the Facility's proposed plan to remedy the remaining deficiency, and that Sovran consultants were "surprised" when ODH rejected the plan and revoked the Facility's license. (Doc. 144 at 15.) Plaintiff contends that Sovran and the other co-Defendants knew or should have known that closure was certain, or at least probable and imminent. *Calloway v. Caraco Pharmaceutical Laboratories, Inc.*, a strikingly analogous recent Sixth Circuit opinion, provides guidance. There, the Sixth Circuit affirmed the district court's finding that Caraco Pharmaceutical Laboratories ("Caraco"), a Michigan pharmaceutical manufacturer, violated the WARN Act by failing to notify affected

11

employees of the effect of a Food and Drug Administration ("FDA")-forced plant closure. 800 F.3d 244, 250 (6th Cir. 2015).

There, as here, an adverse government agency action had an immediate and catastrophic impact on business operations–namely, the FDA served Caraco with a complaint and a warrant, seizing various Caraco-manufactured products at two of its facilities. *Id.* After a bench trial, the district court found that it was reasonably foreseeable that the FDA would execute the action and that the action would cause a massive disruption, ultimately holding Caraco liable under WARN for not notifying its employees of the layoff. *Id.* There is ample evidence here to indicate that the Facility's closure and layoff were reasonably foreseeable. When Marshall first arrived at the Facility, he learned that it had nearly 30 deficiencies, and he described the place as "just a mess." (Doc. 139-5 at 24-25.) Tellingly, Mr. Oswald admitted in his deposition that he guessed Sovran consultants were "deluded in thinking that if [Sovran] showed [ODH] what [Sovran] could accomplish," that ODH would give Sovran an opportunity to correct the Facility's myriad and profound deficiencies. (Oswald Dep., Doc. 151-1 at 4; *but see* Foss Dep., Doc. 131 at 82) Admitted delusion is hardly the mindset of a reasonable administrator or executive.

Nevertheless, because Sovran is not Plaintiff's employer, it may not be rightly held liable under the WARN Act.

## IV. CONCLUSION

The Court **DENIES** Plaintiff's motion for partial summary judgment, and **GRANTS** Defendant's motion for the same. The Court **DENIES** as **MOOT** Plaintiff's outstanding evidentiary motion because the Court did not rely on any of that evidence to reach its conclusion.

Plaintiff's case against Sovran is **DISMISSED with prejudice**. The Clerk is **DIRECTED** to enter judgment in favor of Sovran.

    **IT IS SO ORDERED.**

                                                <u>s/ Algenon L. Marbley</u>
                                                **ALGENON L. MARBLEY**
                                                **UNITED STATES DISTRICT JUDGE**

**DATED:  May 12, 2016**